Floyd Y. Keeler, Plaintiff, v. New York Hide Exchange, Inc., Defendant.

First Department, January 30, 1931.

*J. Alvin Van Bergh,* for the plaintiff.

*Donald Marks* of counsel [*Julius B. Baer,* attorney], for the defendant.

McAvoy, J.   A controversy is submitted here upon an agreed statement of facts.

The plaintiff asked for an injunction against the consummation by the defendant of a proposal of the defendant's board of governors to purchase out of the defendant's capital funds one of the memberships of the defendant corporation.

The defendant is a membership corporation organized under the laws of the State of New York and engaged in the maintenance and operation of an exchange for the purchase and sale of contracts for the future delivery of hides.

Plaintiff is a member of the defendant corporation and also a member of its board of governors.

There are 262 memberships outstanding out of a total of 270 authorized in the defendant corporation.

Two hundred and forty-two of the outstanding memberships were originally sold to individuals, each of whom paid the sum of $2,500 as a membership subscription.   The moneys thus subscribed constitute the capital funds of the defendant corporation.

On July 31, 1930, these funds included investments of a value of $448,922.22.

The expenses of operation of the membership corporation are met by annual dues assessed against each member.   Current dues amount to $250 a year per member.   A board of governors of fifteen members has the entire management of the property and business of the defendant.

On July 21, 1930, a membership was offered for sale for $1,200, which was the lowest then recorded offer of sale.   On the same day it was reported that the liquidating value of membership in the defendant corporation was approximately $1,900.

It was proposed to the board of governors of the defendant that the defendant should purchase said membership at $1,200 and that the membership should be held in the treasury of the defendant subject to the further order of the board.

Plaintiff objected to the purchase of such membership, but, over plaintiff's objection, the board of governors authorized the purchase to be made out of the capital funds of the corporation.

The plaintiff contends that the purchase of an outstanding membership by a membership corporation out of its capital funds results in an illegal reduction in the number of outstanding memberships; that such reduction increases the burden of assessment for operating expenses upon each of the remaining members and those

who are financially weak suffer and may be compelled to offer their memberships upon the market at the distress prices; that to permit such action places the financially strong group in the corporation in a position to take unfair advantage of the weaker members through the use of their own property.

Defendant contends that there is no requirement in the Membership Corporations Law that the number of authorized memberships shall be stated in the certificate of incorporation.

Under section 40 of the Membership Corporations Law (as amd. by Laws of 1926, chap. 722), the determination of membership is contemplated, but the methods by which such determination may be effected are not limited.

Section 20 of the Membership Corporations Law (as amd. by Laws of 1926, chap. 722) provides, in effect, that " The by-laws of any such corporation may make provisions, not inconsistent with law or its certificate of incorporation, regulating the admission, voluntary withdrawal, censure, suspension and expulsion of members; * * *."

Either voluntary withdrawal or expulsion necessarily reduces the number of outstanding memberships.

It is clear that outstanding memberships may be reduced in number in a variety of ways without violating the law.

There is no statutory prohibition as to the use of capital funds of a membership corporation for the purchase of an outstanding certificate of membership.

As far as the members are concerned, the purchase of an outstanding membership for less than the liquidating value can only benefit the remaining members. The equity of each is increased *pro rata*. A member who sells cannot be heard to complain and the remaining members are advantaged.

Each member has not a contractual right with all of the others to have the authorized outstanding memberships remain at any particular number. Each one consents in advance to a change in the authorized membership through the regular process of amendment of the by-laws. It is under the by-laws that the number of authorized memberships is specified; and these by-laws may be amended by the vote of two-thirds of the members voting, after the approval of the proposed amendment by a majority of the board of governors.

The right to take this contemplated action enables the board of governors to provide a market for distressed members to sell their seats, and it will serve to establish a market value for memberships which will benefit both those who find it necessary to sell and those who remain.

From the standpoint of creditors, there is neither actual nor constructive notice of the authorized number of memberships, the number of memberships outstanding, or the capital funds contributed by the members.

The certificate of incorporation as provided by section 10 of the Membership Corporations Law contains no references either to the number of memberships or the capital of the corporation or any subject relating thereto. In other words, creditors are not put upon notice either upon the number of authorized memberships or as to the capital of the corporation.

There is no occasion for treating the capital funds of a membership corporation as a trust fund for creditors. Such a corporation is not operated for profit.

A creditor cannot complain of a reduction of memberships resulting from expulsion, or voluntary withdrawal. A difference in the method by which the reduction is effected should not give creditors the right to object.

We think that under the circumstances the action of the board of governors involves no illegal reduction in the number of outstanding memberships and we find no public policy which would prohibit the contemplated purchase.

Judgment should be directed in favor of defendant, but, as stipulated, without costs.

DOWLING, P. J., FINCH, MARTIN and O'MALLEY, JJ., concur.

Judgment directed in favor of defendant, but, as stipulated, without costs. Settle order on notice.